PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES T.  KIMBALL, | ) | |
| | ) | CASE NO.  4:13cv225 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| BUREAU OF PRISONS, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

*Pro se* Plaintiff James T. Kimball filed this *Bivens* action[1] against the Bureau of Prisons ("BOP"), Federal Correction Institution Elkton (FCI Elkton) Warden Robert Farley, Captain R.  Wilson, Secret Investigative Service (SIS) Lieutenant Butts, Counselor Crissman, Health Services Administrator (HSA) Bunts, Assistant Health Service Administrator (AHSA) Barnes, and Clinical Director Dr. Dunlop.  In the Complaint, Kimball alleges a variety of constitutional claims related to the conditions of his confinement, including deliberate indifference to serious medical need, cruel

---

[1] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).  Although Kimball filed this action pursuant to 42 U.S.C. § 1983, that section is clearly inapplicable, as there is no allegation of action under color of state law.  Kimball is a incarcerated in a federal prison, and the employees of that facility are federal employees not state officials; they act under color of federal law, not state law.  *Bivens* provides federal inmates and detainees with a cause of action analogous to § 1983.

(4:13cv225)

and unusual punishment, and deprivation of due process.  He seeks $ 1.26 million in damages.  For the reasons that follow, the Court hereby dismisses this action pursuant to 28 U.S.C. §1915(e).

## I. <u>Background</u>

Kimball is a federal inmate incarcerated at FCI Allenwood Low.  The Complaint describes five separate incidents that occurred while Kimball was incarcerated at FCI Elkton as the basis for his claims.

First, Kimball requested a "medical type mattress due to a torn roto cuff and serious degenerating back problems," but HSA Bunts, AHSA Barnes and Clinical Director Dunlop, refused his request, causing him"to endure excruciating pain and suffering for many months before being transferred to another prison." ECF No. 1 at 4.  He contends Warden Farley and the BOP "refused to correct the torture." *Id.* Kimball seeks $100,000 in damages for this claim.  *Id.* at 8.

Second, Kimball contends he received improper medical care for a kidney condition, leading to a loss of "serious amounts of blood" and "excruciating pain" lasting for about a month.  *Id.* at 5.

He alleges when he arrived at FCI Elkton he was due for follow-up medical testing

2

(4:13cv225)

after receiving a "stacked stint implant and a renal stint implant" at Lexington Medical Center, however Bunts, Barnes, and Dunlop delayed the medical testing.  As a result, when the testing was finally completed, it revealed an "emergency condition . . . comprised of a totally blocked right kidney, which was blocked and shut down by [a] huge kidney stone."  *Id.*  Kimball asserts these Defendants then delayed treatment of his condition for 60 days causing him  to "lose function in three quarters of his right kidney."  He also contends the physician who conducted laser surgery to treat the kidney stone and who performed a stint retraction, "botched the surgery," and Barnes, Bunts and Dunlop refused his request to replace this doctor, "leaving Kimball to contend with unbelievable pain and bleeding." *Id.*  Kimball seeks $1 million in damages for this claim.  *Id.* at 8.

Third, Kimball complained to prison officials about excessive noise and "screaming" in his housing unit emanating from a nearby "large entertainment room." *Id.* at 6.  He asserts the noise prevented him from sleeping more than 30 minutes at a time, and that Counselor Crissman and Warden Farley refused to remedy the "constant noise" or move him to a different unit.  Kimball seeks $50,000 in damages for this claim.  *Id.* at 8.

Fourth, Kimball alleges Farley and Captain R. Wilson urged another inmate to

3

(4:13cv225)

assault him.  *Id*.  He contends SIS Lt.  Butts conspired with these defendants to cover-up the assault, "keeping Kimball in the Hole and refusing to request outside prosecution, while releasing Kimball's assailant."  *Id.*  Farley and Wilson also purportedly did not provide Kimball medical care for his injuries following the assault, would not identify Kimball's attacker, and "tortured Kimball while he was in the Hole over 3 months . . . ."  *Id.* at 7.  This alleged "torture" included, "banging on Kimball's cell door every 30 minutes, 24 hours a day, seven days a week," refusing Kimball  exercise periods, food, sanitary items, shoes, and a watch, and refusing to provide Kimball legal documents or copies of his legal filings.  *Id.*  Kimball seeks $100,000 in damages on this claim.  *Id.* at 8.

Fifth, Kimball purchased 2 copy cards from the FCI Elkton commissary for $5 each, but the copy cards did not work.  When he reported this to the commissary officials, they would not issue a refund, but informed Kimball they could send the cards back to the manufacturer.  However, they also told Kimball that the replacement cards would not work, in any event, because a new system was being installed. Kimball then requested a receipt if he was to send the cards back, but the commissary refused.  Kimball seeks $10,000 in damages for this claim.  *Id.* at 8.

Kimball asserts he has filed or attempted to file grievances regarding each of

4

(4:13cv225)

the foregoing incidents and that he has exhausted his administrative remedies.

## II.  Legal Standard

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2]  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest that clearly does not exist. *Neitzke*, 490 U .S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to

---

[2] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the Plaintiff and without service of process on the Defendants, if the court explicitly states that it is invoking § 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *Benson v. O'Brian*, 179 F.3d 1014, 1016-17 (6th Cir.1999); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

5

(4:13cv225)

the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the Complaint are true." *Id.* (citations omitted). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

6

(4:13cv225)

### III.  Discussion

**A.  Proper Parties and Claims**

In his complaint, Kimball alleges causes of action against the Bureau of Prisons, as well as Defendants Farley, Wilson, Butts, Crissman, Bunts, Barnes, and Dunlop in both their official and individual capacities, "as non-governmental employees." ECF No. 1 at 1.

**1.  Bureau of Prisons**

Kimball cannot assert a *Bivens* claim against the BOP.  The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity.  *United States v. Sherwood*, 312 U.S. 584, 590–91 (1941).  Congress defines the exact terms and conditions upon which the government and its agencies may be sued and the terms of its consent define the parameters of federal court jurisdiction to entertain suits brought against the United States.  *United States v. Orleans*, 425 U.S. 807, 814 (1976); *Honda v. Clark*, 386 U.S. 484, 501 (1967).  A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied.  *United States v. King*, 395 U.S. 1,4 (1969); *Soriano v. United States*, 352 U.S. 270, 276 (1957).

*Bivens* provides a cause of action against individual officers acting under color

7

(4:13cv225)

of federal law alleged to have acted unconstitutionally. *Corr. Servs. Corp. v. Malesko*, *534 U.S. 61, 70 (2001)*). The United States has not waived sovereign immunity for itself or for any of its agencies for a *Bivens* action. *See Fed. Deposit Ins. Corp. v. Meyer*, *510 U.S. 471, 484–86 (1994)*. Because the only claims Kimball asserts against the BOP are *Bivens* claims, the BOP must be dismissed from this action. *Okoro v. Scibana*, *63 F. App'x 182, 184 (6th Cir. 2003)* (stating that a federal prisoner can not bring a *Bivens* action against the BOP).

## 2. **Official Capacity Claims**

Kimball's official capacity claims against Defendants Farley, Wilson, Butts, Crissman, Bunts, Barnes, and Dunlop must be dismissed as well. These claims are necessarily construed as claims against the Federal Bureau of Prisons and, thus, the United States. *See Monell v. Dep't of Soc. Servs.*, *436 U.S. 65 8, 690 n. 55 (1978)* ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Dotson v. Wilkinson*, *477 F. Supp. 2d 838, 851–52 (N.D. Ohio 2007)*. Because claims against the United States are barred, as discussed above, Kimball's claims against these Defendants in their official capacities as agents of the BOP (and, thus, the United States) are also subject to summary dismissal under *§ 1915(e)*.

8

(4:13cv225)

### 3. Individual Capacity Claims Against Farley: Supervisory Liability

To the extent Kimball is alleging Defendants Farley is liable in his individual capacity based on his supervisory role as Warden, these claims are without merit. The theory of *respondeat superior* does not apply in *Bivens* suits to impute liability onto supervisory personnel. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To establish liability of a supervisor, a plaintiff must show, at a minimum, "that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* Such liability "must be based on active unconstitutional behavior" and cannot be based on the mere right to control employees. *Id.* A plaintiff must demonstrate that a supervisory defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Supervisory liability cannot be based upon the failure to act, or simply because a supervisor denied a grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

In the instant case, Kimball appears to allege generally that Farley should be held liable because he had "refused to correct the torture, as did the higher-ups within the BOP – all the way to BOP headquarters in Washington, D.C." ECF No. 1 at 4.

(4:13cv225)

He fails, however, to allege any specific instances of "active unconstitutional behavior" on the part of this Defendant relating to the refusal to provide Kimball with a different mattress, denial of medical care, excessive noise, and defective copy cards. In the absence of any such allegations, the Court finds Kimball has failed to establish any grounds to impose supervisory liability upon Farley with regard to these claims. Accordingly, the Court finds that Kimball's individual capacity claims related to these events against Defendant Farley for supervisory liability fail to state claims upon which relief may be granted and are subject to dismissal under § 1915(e).[3]

### B.  Eighth Amendment Claims

Kimball alleges Defendants Bunts, Barnes and Dunlop violated his constitutional rights by (1) not providing him with a medical type mattress; (2) delaying the administration of emergency medical treatment; and (3) refusing his request for a different doctor.  He alleges Defendants Crissman and Wilson violated his constitutional rights by refusing to remedy the constant noise in his housing unit or moving him to a different unit.  Further, Defendants Farley, Wilson and Butts purportedly violated Kimball's constitutional rights by (1) conspiring to solicit another inmate to assault him; (2) covering-up the assault; and (3) "torturing" him

---

[3] Kimball's allegations regarding the inmate assault and Farley's treatment of him while he was in segregation are addressed *infra*.

10

(4:13cv225)

while he was in solitary confinement by banging on his cell door and depriving him of food, exercise time, and sanitary items. Although Kimball does not cite a constitutional basis for these claims, the Court will liberally construe them as arising under the Eighth Amendment.

The Eighth Amendment requires that convicted prisoners be provided "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Life's necessities include shelter, sanitation, food, personal safety, medical care, and clothing. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, a prisoner must plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Only extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9.

The Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 325 (1986). *See also*

11

(4:13cv225)

*Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). To succeed in an Eighth Amendment challenge based on unsafe prison conditions, the Plaintiff must establish that "(1) a single, identifiable necessity of civilized human existence is being denied (objective prong) and (2) the defendant prison official acted with a sufficiently culpable state of mind." *Hadix*, 367 F.3d at 525.

With respect to the subjective prong, there is no Eighth Amendment violation unless the defendant is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and he or she draws "the inference." *Farmer*, 511 U.S. at 837. Negligent exposure to a risk is not sufficient to create an Eighth Amendment violation. *Id.* *See also Hadix*, 367 F.3d at 525. Rather, deliberate indifference "can best be compared to criminal law's 'subjective recklessness.'" *Id.* at 525 (quoting *Farmer*, 511 U.S. at 839–40). *See also Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) .

### 1. **Deliberate Indifference to Medical Need**

The Supreme Court defines "deliberate indifference to serious medical needs of prisoners . . . [as] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The objective component requires that the alleged deprivation be "sufficiently serious." *Farmer, supra*, 511 U.S. at 834; *Blackmore v.*

12

(4:13cv225)

*Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (seriousness of a prisoner's needs is evaluated by the "obviousness" approach). To meet this requirement, Kimball must point to a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore, supra*, 390 F.3d at 897 (emphasis in original) (citing *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). Kimball must also establish a subjective element showing the prison official acted with a sufficiently culpable state of mind. *Id.* This means that a defendant "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. Furthermore, a defendant "must . . . both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Preyor v. City of Ferndale*, 248 F. App'x 636, 642 (6th Cir. 2007). A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834.

Although Kimball arguably suffered from a serious medical need, he has not alleged facts to suggest that the medical personnel at FCI Elkton were deliberately indifferent to his health. An official acts with deliberate indifference when he acts with criminal recklessness, a state of mind that requires that the official act with

13

(4:13cv225)

conscious disregard of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 837.

Mere negligence will not suffice. *Id.* at 835–36.  *See also* *Whitley v. Albers*, 475 U.S.

312, 319 (1986) (finding that deliberate indifference is characterized by obduracy or

wantonness, not inadvertence of good faith error).  Consequently, allegations of

medical malpractice, negligent diagnosis, or negligent treatment fail to state an Eighth

Amendment claim.  Moreover, where a prisoner has received some medical attention

and the dispute is over the adequacy of the treatment, federal courts are hesitant to

second guess medical judgments and to constitutionalize claims which really arise

under state tort law.  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5. (6th Cir. 1976).

Kimball alleges he had surgery at Lexington Medical Center.  He subsequently

received medical testing at FCI Elkton that revealed he had a kidney stone.  He was

sent for laser surgery and stint retraction.  Although he alleges a delay in the receipt

of these services, he has not alleged facts indicating medical staff was deliberately

indifferent to his health or were aware of and disregarded an excessive or obvious risk

to his health or safety.  Kimball's claim, at best, is one of medical malpractice.  He has

not, however, alleged facts in the Complaint to suggest Dr. Dunlop or the Health

Services Administrators acted with a degree of culpability greater than mere

negligence.

14

(4:13cv225)

Further, Kimball's allegations with regard to Farley and Wilson refusing to provide him medical care for shoulder and back injuries suffered during an assault by another inmate also fail to state a claim for deliberate indifference.  Kimball's allegations in this regard are wholly conclusory and he fails to offer any facts to suggest that these injuries were sufficiently serious.  *Twombly*, 550 U.S. at 570. Further, he  does not allege that he continues suffer from these injuries or that his injuries developed into a more serious condition.  Moreover, Kimball fails to allege Defendants knew of and disregarded an excessive risk to his health as a result of his injury.

Accordingly, for the foregoing reasons, the Court finds the Complaint fails to allege either a "substantial risk of serious harm," or that Defendants had a "sufficiently culpable state of mind." *See Farmer*, 511 U.S. at 834.  Kimball  makes only the brief and conclusory assertions that Defendants intentionally caused him to be subjected to inhumane treatment.  *See Iqbal*, 556 U.S. at 686 (indicating that while a plaintiff was not required to plead a person's state of mind with particularity, the standards of Rule 8 still apply); *see also Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (requiring that "pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the

(4:13cv225)

requisite state of mind"). Therefore, the Court finds Kimball's claim of deliberate indifference to his medical needs is dismissed  pursuant to § 1915(e).

## 2.  <u>Conditions of Confinement</u>

### a.  Denial of "Medical Type Mattress"

Kimball alleges that Defendants Bunts, Barnes and Dunlop refused his request for a "medical type mattress" leading him to experience months of back pain and suffering until he was transferred to another prison.  "In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment." *Richmond v. Settles, 450 F. App'x 448, 455 (6th Cir. 2011)* (citing *Grissom v. Davis*, 55 F. .App'x 756, 757 (6th Cir. 2003); *Shaw v. Mangione*, 27 F. App'x 407, 407 (6th Cir. 2001); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) ("The defendants did not violate [the plaintiff's] Eighth Amendment rights by depriving him of a mattress for a two week period.")).  Kimball's factual allegations fail to state a claim upon which relief can be granted for the violation of his rights under the Eighth Amendment.  Kimball does not allege that he was not provided a mattress or bedding at all.  Rather, he alleges that the medical staff determined that he did not need a "medical" mattress for back pain and that as a result he endured discomfort until he

16

(4:13cv225)

was transferred to another facility.  However, Kimball has not alleged that he suffers from any lasting physical injury caused by Defendants' deprivation of a special mattress or that any Defendant interrupted a "prescribed plan of treatment" for a serious medical need.  *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991). Therefore, Kimball has no Eighth Amendment claim for deprivation of a "medical mattress."  *See Koos v. Corr. Corp. of Am.*, 63 F. App'x 796, 797 (6th Cir. 2003).

### b.  Food, Sanitary Items, Shoes, and Watch

Kimball also alleges that he was "tortured" while in solitary confinement in various ways, including deprivation of food, sanitary items, his shoes and watch, and banging on his cell door.  The deprivation of life's necessities, such as food or water, can constitute a claim under the Eighth Amendment, *see Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 512 (6th Cir. 2001), but the withholding of meals, while it may result in some discomfort to the prisoner, does not result in a health risk to the prisoner sufficient to qualify as a "wanton infliction of pain" where the prisoner continues to receive adequate nutrition.  *Cf. Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (affirming the district court's conclusion that the prisoner's Eighth Amendment rights were not violated when he was served only one meal a day for 15 consecutive days where Defendants had demonstrated that the one meal furnished was of sufficient

17

(4:13cv225)

caloric content to maintain normal health for the 15 days involved).  Further, although

the deprivation of basic sanitation may give rise to an Eighth Amendment claim, *see*

*Halliburton v. Sunquist*, 59 F. App'x 781, 782 (6th Cir. 2003), a plaintiff must allege

some   physical injury arising from that deprivation to state a claim for relief.

*Richmond v. Settles*, 450 F. App'x at 456.

Here, Kimball does not allege that his health suffered as a result of food

deprivation, nor that he suffered any injury resulting from a lack of sanitary items,

shoes or a watch.  It appears, he is instead asserting a claim for the mental anguish he

allegedly suffered as a result of this treatment.  Such a claim is barred by 42 U.S.C.

§ 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury

suffered while in custody without a prior showing of physical injury." *See Jennings*

*v. Mitchell*, 93 F. App'x 723, 724-25 (6th Cir. 2004); *see also Geiger v. Jowers*, 404

F.3d 371, 374 (5th Cir. 2005) (finding mental anguish, emotional distress,

psychological harm, and insomnia do not constitute physical injury for purposes of the

Prison Litigation Reform Act).  Consequently, Kimball's claims as they relate to

deprivation of food, sanitary items, shoes and a watch must be dismissed for failure

to state a claim.

### c.  Exercise

18

(4:13cv225)

Kimball contends that defendants refused him 1-hour exercise periods while he was in segregation for over 3 months. As the Sixth Circuit has observed, "It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). *See also Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) ("[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates."). Nevertheless, the Sixth Circuit has not "set a minimum amount of time a prisoner must have access to outdoor recreation[.]" *Rodgers v. Jabe*, 43 F.3d 1082, 1086–87 (6th Cir. 1995).

Here, Kimball does not claim that he was totally denied any opportunity to exercise in order to maintain reasonably good health, or that he was prevented from performing calisthenics, running in place, or other exercises in his cell. Rather, he simply states that he was not provided 1-hour periods for exercise. Kimball's vague and conclusory allegations are insufficient to show that he was subjected to the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Moreover, he has not pleaded any facts to suggest that the persons whom allegedly denied him 1-hour

19

(4:13cv225)

exercise periods acted with deliberate indifference or with a sufficiently culpable state of mind, which is also required for an Eighth Amendment claim. *See Deleon v. Hamilton Cnty. Sheriff's Dep't,* No. 1:12-cv-68, 2012 WL 3116280, at *11 (E.D. Tenn. July 31, 2012); *Conyers v. Mich. Dep't of Corr.*, No. 5:06-CV-100, 2006 WL 2644990, at *6 (W.D. Mich. Sept. 14, 2006).

### d. Excessive Noise

Kimball alleges that he complained to Crissman and Farely about the noise levels in his housing unit, but they refused to move him to another cell. He complains that other inmates screamed and shouted 24 hours a day, preventing him from sleeping more than 30 minutes at a time. Further, Kimball complains that while he was in segregation Wilson or others banged on his cell door every 30 minutes.

There is no doubt that "[e]xcessive noise in a prison can state a valid Eighth Amendment claim." *Green v. Strack*, No. 94–17214, 1995 WL 341544, at *1 (9th Cir. June 8, 1995). To do so, however, the noise must be so excessive and pervasive as to pose a serious risk of injury, *see Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994), or pain, *see Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988), or sleep deprivation, *see Caldwell v. District of Columbia*, 201 F. Supp. 2d 27, 35 (D.D.C. 2001). "[Hi]gh levels of noise are not, without more, violations of the Eighth

20

(4:13cv225)

Amendment." *Grubbs v. Bradley*, 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982) (citation omitted). As one court has observed, the cases finding an Eighth Amendment violation based on excessive noise have all "involved incessant noise throughout the day and night, which at times was significantly beyond acceptable decibel levels and could have resulted in possible hearing loss." *Sterling v. Smith*, No. CV606–103, 2007 WL 781274, at *3 (S.D. Ga. Mar. 8, 2007) (discussing *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996); *Antonelli v. Sheehan*, 81 F.3d 1422, 1433 (7th Cir. 1996); *Toussain v. McCarthy*, 597 F. Supp. 1388, 1410 (N.D. Cal. 1984), *rev'd in part on other grounds*, 801 F.2d 1080, 1110 (9th Cir. 1986)).

Kimball has failed to state an Eighth Amendment claim for excessive noise. Although he alleges that he had difficultly sleeping, he does not allege that he suffered from a total lack of sleep or that the shouting emanating from the entertainment room was so excessive and pervasive as to pose a serious risk of hearing loss or pain. Further, banging on a cell door is not an atypical or significant hardships in relation to the ordinary incidents of prison life. *Cf. Sandin v. Conner*, 515 U.S. 472, 484 (1995) (slamming cell doors); *Dorsey v. Metro. Gov't for Nashville & Davidson Cnty.*, No. 3:11-0111, 2011 WL 2118269 (M.D. Tenn. Apr. 14, 2011) (inmate's complaint about noise fails to rise to the level of constitutional magnitude). Moreover, Kimball

(4:13cv225)

fails to allege that he suffered any injury or that any Defendant was subjectively aware of a serious risk to his health and was deliberately indifferent to that risk.  Kimball's complaints are therefore not sufficient to support a constitutional claim.  *Rhodes*, 452 U.S. at 349; *Ivey*, 832 F.2d at 954; *Zain v. Osborne*, No. 4:10CV-P109-M, 2012 WL 435582 (W.D. Ky. Feb. 9, 2012).    Accordingly, Kimball's claims concerning excessive noise will be dismissed for failure to state a claim upon which relief may be granted.

### 3.  **Assault by Unknown Inmate**

Kimball seeks to hold Defendants Farley and Wilson liable for an assault on him perpetrated by an unknown inmate.  The Eighth Amendment to the United States Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).  However, not "every injury suffered by one prisoner at the hands of another . . .  translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with deliberate indifference to a substantial risk that another prisoner would cause the Plaintiff serious harm. *Id.* at 834.  Kimball

(4:13cv225)

alleges that "apparently" Defendants Farley and Wilson solicited an unknown prisoner to assault him, however, the Complaint does not state what basis Kimball has for making this assertion. *Cf. Iqbal*, 556 U.S. at 680 (allegations that defendants "knew of, condoned, and willfully and maliciously agreed" to subject plaintiff to harsh conditions of confinement insufficient to plausibly suggest discriminatory state of mind). Kimball's claim is wholly conclusory and fails to state a claim for relief.[4]

### C. Denial of Access Claims

Given a liberal reading, the Complaint appears to assert two denial of access claims: one for denial of access to the grievance system and one for hindering access

---

[4] Kimball's related conspiracy claim also fails to state a claim for relief. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). In order to state a claim sufficient to survive screening, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim. *Twombly*, 550 U.S. 544, 555, n. 3; *see also Iqbal*, 556 U.S. at 678 (the court need not accept threadbare recitals of the elements of a cause of action supported by conclusory statements). A sufficient claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim for relief. *Id.* at 679. In the context of an illegal conspiracy, a sufficient complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Conspiracy claims must be pled with specificity, and vague and conclusory allegations unsupported by facts are insufficient to state a conspiracy claim. *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Kimball's conspiracy claims against Defendants Farley, Wilson, and Butts fails because he offers no facts in support of his assertion that these defendants conspired against him. The conspiracy claims are therefore subject to dismissal under 28 U.S.C. § 1915(e). *See Scott v. Norton*, 96 F. App'x 378, 380 (6th Cir. 2004) (affirming summary dismissal of prisoner civil rights complaint where plaintiff offered no factual support or evidence of conspiracy).

23

(4:13cv225)

to the Courts. Kimball's claim for denial of access to the courts is asserted in one sentence: "Mr. Farley and R. Wilson, to include Mr. Crissman and others unknown, absolutely refused to provide Kimball documents for legal filings; filings, to include his Administrative Remedy process." ECF No. 1 at 7.

As an initial matter, there is no independent right of access to the prison grievance system. *See Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445(6th Cir. Apr. 1, 2005); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Because there is no inherent constitutional right to an effective prison grievance procedure, a prison official's failure to facilitate the grievance process, alone, does not implicate the First Amendment right of access to the courts. *Walker, supra*; *Young v. Gundy*, No. 01–2111, 2002 WL 373740, at *2 (6th Cir. Mar. 7, 2002); *Antonelli*, 81 F.3d at 1430–31; *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, Defendants are not liable for failing to act on Kimball's informal grievance or for failing to provide him with the grievance forms. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008).

Moreover, to state a claim for denial of access to the courts, Kimball must allege that particular actions of the Defendants prevented him from pursuing or caused

24

(4:13cv225)

the rejection of a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an underlying claim, without which a plaintiff cannot be said to have suffered injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Kimball must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In order words, he must demonstrate "actual injury" by showing that his underlying claim was non-frivolous, and that it was frustrated or impeded by Defendants. *Lewis*, 518 U.S. at 353. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint[] . . . ." *Christopher*, 536 U.S. at 415.

Kimball does not allege that he suffered an actual injury with respect to a non-frivolous direct appeal, habeas corpus petition, or a civil rights action. He provides no facts to elaborate on this claim, which he states wholly as a legal conclusion. The Court is not required to accept as true a legal conclusion cast as a factual allegation. *Papasan* v. *Allain*, 478 U.S. at 286. Absent an indication that these Defendants actually prevented Kimball from filing or caused the dismissal of one of the designated types of legal actions, his claim for denial of access to the courts must

25

(4:13cv225)

be dismissed.

### D. Due Process

The Complaint is unclear but it appears Kimball is asserting that Defendants Butts, Farley and Wilson violated his procedural due process rights when they refused to process his grievance regarding the assault he suffered at the hands of another inmate, refused to initiate "outside prosecution" against Kimball's assailant, and placed Kimball in segregation. He also asserts that he was unable to obtain a refund for defective copy cards he purchased from the prison commissary.

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that a liberty or property interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, procedural due process analysis involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; . . . the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citation omitted). In other words, "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickethaupt v. Jackson*, 2010 WL 395929, at*2 (6th Cir. Feb. 4, 2010). *See also Wilkinson*, 545 U.S. at 224.

26

(4:13cv225)

Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. at 485.  The Due Process Clause, standing alone, confers no liberty interest in freedom from state action taken within the sentence imposed. *Id.* at 480.  "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.* at 485.

The Court rejects Kimball's claims that his procedural due process rights were violated by  Defendants' refusal to process his informal grievance or to provide him with proper grievance forms.  As discussed above, the Sixth Circuit has held that there is no inherent constitutional right to an effective prison grievance procedure.  *See Argue v. Hofmeyer*, 80 F.  App'x 427, 428 (6th Cir. Oct. 30, 2003); *Walker*, 128 F. App'x at 445.  Moreover, the mere fact that Kimball was unsuccessful in his grievances does not mean that the grievance process itself is constitutionally inadequate.  While Kimball complains that Defendants Farely and Wilson refused his demand to file a formal grievance, the Complaint indicates that Kimball had the ability to, and did in fact, seek recourse from the BOP *via* appeal. Thus, the Court finds that the alleged inadequacies in FCI Elkton's grievance process are insufficient to

(4:13cv225)

demonstrate interference with a "liberty or property interest."

The Court likewise rejects Kimball's claim that the prison commissary's refusal to refund monies paid for defective copy cards violated his right to procedural due process.  Inmates have no federal constitutional right to be able to purchase items from a commissary.  *See, e.g., Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("we note that we know of no constitutional right of access to a prison gift or snack shop."); *Bagwell v. Brewington-Carr*, No. 97-714-GMS, 2000 WL 1239960, at *3 (D. Del. Aug. 25, 2000); *Acree v. Peterson*, No. 99-1085-KI, 2000 WL 1141587, at *7 (D. Or. Aug. 1, 2000) ("Plaintiff has no protected property interest to purchase commissary items.").  It follows that Kimball has no federal constitutional right to a refund for items purchased at the prison commissary.  *See McKinnie v. Colvert*, No. CIV A 4:08-CV-P18-M, 2008 WL 4911121, at *3 (W.D. Ky. Nov. 13, 2008) (dismissing prisoner's challenge to prison commissary's refund policy for failure to state a constitutional claim).  Consequently, Kimball has failed to state any due process claim with respect to the copy card issues.

## IV.  Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision

(4:13cv225)

could not be taken in good faith.


        IT IS SO ORDERED.


 June 19, 2013                              /s/ Benita Y. Pearson
Date                                       Benita Y. Pearson
                                           United States District Judge