PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES T. KIMBALL, | ) |
|         Plaintiff, | ) CASE NO.  4:13CV00225 |
| v. | ) JUDGE BENITA Y. PEARSON |
| BUREAU OF PRISONS, *et al.*, | ) |
|         Defendants. | ) **MEMORANDUM OF OPINION** ) **AND ORDER** |

On June 19, 2013, the Court dismissed *pro se* Plaintiff James T. Kimball's Complaint filed pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).  Plaintiff is currently incarcerated at the Federal Correction Institution (FCI) Allenwood Low.  In his Complaint, Kimball asserted several claims related to the conditions of his confinement while he was incarcerated at FCI Elkton, including deliberate indifference to serious medical needs, cruel and unusual punishment, and deprivation of due process.  The Defendants in the original Complaint were the Bureau of Prisons (BOP), FCI ElktonWarden Robert Farley, Captain R. Wilson, Secret Investigative Service (SIS), Lieutenant Butts, Counselor Crissman, Health Services Administrator (HSA) Bunts, Assistant Health Service Administrator (AHSA) Barnes, and Clinical Director Dr. Dunlop.  This matter is now before the Court upon Plaintiff's "Amended Complaint," which Plaintiff contends addresses the deficiencies found by the Court in his original Complaint.  Plaintiff asks the Court to allow him to proceed on his proposed Amended Complaint.  The Court construes Kimball's post-judgment pleading as a motion for reconsideration pursuant to Rule 59(e) and as a post-judgment motion to

(4:13CV00225)

amend his complaint to add additional factual allegations and attachments.[1] For the reasons that follow, Plaintiff's motion is denied.

### I. Background

The Court thoroughly outlined the factual allegations of Plaintiff's original Complaint in its previous Memorandum Opinion and Order dismissing this case. The reader's familiarity therewith is therefore presumed. The Court dismissed this action, concluding that Plaintiff's claims against the BOP and the individual officers in their official capacities were subject to dismissal on sovereign immunity grounds. Further, the Court determined that Plaintiff had failed to plead sufficient facts to support his individual capacity claims under the Eighth, First and Fourteenth Amendments. Plaintiff's proposed amended complaint purports to address these deficiencies.

First, Plaintiff names the United States as a "proper party" in the place of the BOP. Next, Plaintiff has submitted as attachments to his proposed amended complaint, his BOP administrative remedy appeals and letters he sent to the BOP director and to "Senator Nelson." (ECF No. 11-1.) Plaintiff contends these documents contain additional factual allegations, which, when considered in conjunction with his original Complaint, are sufficient to revive all of his previous claims. These attachments were filed as a four page document, each page consisting of four individual xeroxed copied documents tiled horizontally across the page, rendering a large amount of the text too small

---

[1] *See, e.g., Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617 (6th Cir. 2002) (construing timely post-judgment motion seeking leave to file amended complaint as a Rule 59(e) motion, despite styling of the motion as one for leave to file amended complaint under Rule 15(a), and lack of any reference in the motion to Rule 59(e)); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1047 (6th Cir. 2001) (treating timely motion to reconsider as a Rule 59(e) motion; *Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1148 n. 2 (6th Cir. 1996) (construing timely "motion to vacate the summary judgment" as Rule 59(e) motion).

2

(4:13CV00225)

and faint to be legible. Aided by a magnifying glass, the Court was able to discern the following additional factual allegations.

In or around July 2011, Kimball was transferred from the Federal Medical Center in Lexington, Kentucky (FMC Lexington) to FCI Elkton. Prior to his transfer, Kimball's medical classification was a "category 4" and he had been diagnosed with "serious degenerative kidney disease" and had received an "aortic aneurysm procedure, installing a curved stacked stint grafts," which needed to be "closely monitored by a specialist familiar with vain surgery." (ECF No. 1-1 at 1.) Kimball requested a transfer to the FCI in Jesup, Georgia, because that facility had a sonogram on site to monitor his kidney stones and vein functioning. He asserts FMC Lexington lowered his medical rating to "category 2," but instead of sending him to FCI Jesup, he was transferred to FCI Elkton, which did not have a sonogram or a vein specialist on staff. When Kimball complained to the medical staff at FCI Elkton, they assured him they would be able to care of him and that he would receive the needed medical testing. He asserts the FCI Elkton medical staff would not take him to a medical facility for required follow-up testing because of the costs associated with transporting a single inmate out to the hospital. Instead, Kimball alleges FCI Elkton delayed conducting a physician recommended CT scan physician until August 26, 2011, when a mobile CT scan was brought to the prison.

Kimball asserts the CT scan revealed that his right kidney was blocked by a large kidney stone, but FCI Elkton waited until October 28, 2011, to send him to an urologist. He indicates that prison staff again informed him the delay was necessary because of the costs associated with transporting him to the hospital and that he would have to wait until there were enough prisoners all

(4:13CV00225)

going to the same specialist. Ultimately, an urologist confirmed the blockage found by AHSA Barnes and Dr. Dunlop and informed Kimball that an urinalysis conducted on July 30, 2011, indicated abnormal blood content in his urine. Kimball alleges this was the first time he was aware of the urinalysis results because the FCI Elkton medical staff had not informed him of these test results.

Thereafter, Kimball contends that he had to wait another 60 days before receiving laser surgery to treat his kidney stone. Further, he alleges when he did receive the needed surgery, the surgeon "botched" the surgery and, as a result, he contracted an infection and endured "excruciating pain."[2] He states that as of February 14, 2012, he has not received additional, physician recommended medical testing, including duplex ultrasounds.

## II. Standard of Review

After judgment has been entered, a complaint may not be amended without leave of court. *See* Fed. R. Civ. P. 15(a)(2). *See also Mitchell v. Cmty. Care Fellowship*, 8 F. App'x 512, 514 (6th Cir. 2001) ("A motion to amend a complaint may be considered by the district court even though judgment has already been entered." (citations omitted)). In *LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013), the Sixth Circuit held that a court can allow a prisoner to amend his complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure, even if the complaint is subject to dismissal under the Prison Litigation Reform Act (PLRA). *Id.* at 951, *overruling McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Although motions to amend a complaint against a

---

[2] Kimball's remaining exhibits appear to relate to the prison staff's refusal to provide him a "medical type mattress," excessive noise, and an assault by another inmate. These documents, however, are completely illegible and, consequently, will not be considered by the Court.

(4:13CV00225)

party are "freely" granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), "a district court should deny a motion to amend where the proposed amended complaint could not withstand a Fed. R. Civ. P. 12(b)(6) motion." *Massingill v. Ohio Adult Parole Auth.*, 28 F. App'x 510, 511 (6th Cir. 2002) (citation omitted). Further, in order for a complaint to be amended after final judgment has been entered, the plaintiff must also show that he is entitled to one of the grounds of relief set forth in Fed. R. Civ. P. 59 or 60. *See Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010). Under Rule 59, a court may alter a judgment based on "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."[3] *Id.* at 615. The more stringent post-judgment standard is designed to prevent plaintiffs from "[using] the court as a sounding board to discover holes in their arguments, then reopen[ing] the case by amending their complaint to take account of the court's decision." *Id.* at 616 (citing *James v. Watt*, 716 F.2d 71, 78 (1st Cir. 1983) (Breyer, J.)).

### III. Discussion

*A.    Substitution of United States as a Party Defendant*

First, plaintiff's proposed substitution of the United States as a party in the place of the BOP would not salvage his claims against the BOP or his official capacity claims against the individual defendants for the reasons previously stated by the Court. The United States has not waived

---

[3]    Under Rule 60, a court may relieve a party from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation, or misconduct by the opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60.

(4:13CV00225)

sovereign immunity for *itself* or for any of its agencies in a *Bivens* action. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484–86 (1994). Further, Plaintiff's *Bivens* claims against the individual defendants in their official capacities would be construed against the United States and would be barred for the same reason. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 851–52 (N.D. Ohio 2007). Accordingly, the proposed amendment would be futile.

### B. *Claims Against Warden Farley*

Next, Plaintiff takes issue with the Court's dismissal of his claims against Warden Farley. The Court dismissed those claims on the grounds that Plaintiff could not hold the Warden liable under the theory of *respondeat superior* and absent any alleged active unconstitutional behavior on the Warden's part. Plaintiff now alleges that Warden Farley "was advised that Kimball was being tortured, receiving cruel and unusual treatment, irreparable harm," as evidenced by his newly submitted exhibits. (ECF No. 11 at 3.) But, as the Court noted in its previous opinion, allegations of mere awareness or tacit approval of an employee's unconstitutional behavior are insufficient to support a claim against the Warden based on his supervisory capacity. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Because Plaintiff has not alleged that Warden Farley actively participated in any unconstitutional conduct, he has not established any grounds to impose supervisory liability upon him, and the proposed amendment would be futile. *Id.*; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004); *Fuller v. Shartle*, No. 4:11CV1821, 2012 WL 1068805, at *2 (N.D. Ohio Mar. 29, 2012) ("*Bivens* liability cannot attach simply because a supervisor denied an administrative grievance

6

(4:13CV00225)

or failed to act based upon information contained in a grievance.").

### C. *Conspiracy Claims*

Nor do Plaintiff's attachments or proposed Amended Complaint lend any further factual support to his conspiracy claims against the individual defendants. The Sixth Circuit has defined a § 1983 civil conspiracy as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). Conspiracy claims must be pled with a degree of specificity. *Hamilton v. City of Romulus*, 409 F. App'x 826, 835–36 (6th Cir. 2010) (citing *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). Vague and conclusory allegations unsupported by material facts are insufficient, although circumstantial evidence of an agreement among all conspirators may provide adequate proof. *Id.* Here, Plaintiff's proposed amendment does not make any specific allegations demonstrating any connection between the Defendants' actions or that they acted in concert to violate his constitutional rights.

### D. *Deliberate Indifference to Serious Medical Need*

Turning to his Eighth Amendment claims, Kimball's proposed Amended Complaint next alleges that his medical records demonstrate several serious health problems, including ongoing kidney problems, which he received treatment for at FMC Lexington, but which the medical staff at FCI Elkton deliberately delayed treating, causing a partial loss of kidney function and pain. The

(4:13CV00225)

Court originally dismissed this claim because it appeared that Kimball had not alleged facts indicating the medical staff was aware of and disregarded an excessive or obvious risk to his health and safety or that they acted with a degree of culpability greater than mere negligence. Contrary to Plaintiff's assertions, his proposed amendment does not correct this deficiency.

In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court concluded that the Eighth Amendment was violated by acts of "deliberate indifference to serious medical needs of prisoners." The Court further explained: "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (internal citations omitted). Plaintiff claims that each Defendant was notified that he had serious health problems but delayed conducting prescribed medical testing until a medical emergency existed. (ECF. No. 11 at 4-6.) In sum, Plaintiff claims that by delaying to do a CT scan and to conduct laser surgery to remove a kidney stone, Defendants were deliberately indifferent to his serious medical need in violation of his Eighth Amendment rights.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). It is indisputable that Plaintiff's kidney condition was a serious medical need. *See Thomas v. Webb*, 39 F. App'x 255, 256 (6th Cir. 2002) (kidney stone is a serious medical need).

Deliberate indifference is "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v.*

(4:13CV00225)

*City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1970)). The deliberate indifference standard contains both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). The objective component inquires whether "the deprivation [was] sufficiently serious;" the subjective component inquires whether the "officials act[ed] with a sufficiently culpable state of mind." *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

Here, Plaintiff alleges that he received a CT scan, urinalysis, and laser kidney surgery while he was incarcerated at FCI Elkton. Under any liberal reading of the Complaint and the proposed Amended Complaint, none of the Defendants can said to have caused Plaintiff to not receive treatment for his kidney disease. Instead, the Complaint may be liberally read as challenging the medical judgment of the medical staff at FCI Elkton by questioning their decision not to send Plaintiff to the hospital for a CT scan or to see an urologist sooner. As this Court observed in its previous Order, however, when the cause of action is not based on allegations that treatment was denied but rather that treatment was inadequate, courts are reluctant to second guess the medical provider. *See, e.g., Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995) (granting summary judgment and dismissing Eighth Amendment claims where evidence demonstrated negligence at best). Moreover, where, as here, a Complaint alleges medical malpractice, such allegations may not constitute an Eighth Amendment violation. As the Supreme Court concluded in *Estelle*:

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend

9

(4:13CV00225)

'evolving standards of decency' in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 106; *see Durham v. Nu'man*, 97 F.3d 862, 868–69 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997). The Complaint's allegations concerning the medical treatment of Plaintiff's kidney stone, including any delay in medical testing or surgery, do not amount to deliberate indifference. *Thomas*, 39 F. App'x at 256 (no violation of Eighth Amendment where kidney stone condition was treated with pain relievers, a prescription to reduce calcium levels, and with catheterization and diet management).

This is not a case in which an official acted with deliberate indifference to a prisoner's serious medical needs. Although Plaintiff may be understood to disagree with the medical judgments of the prison's medical providers, he has failed to plead facts that might plausibly give rise to an Eighth Amendment violation with regards to Defendants Bunts, Barnes, and Dunlop. Accordingly, the proposed amendment would be futile.[4]

### E. *Assault by Unknown Inmate and General Allegations of Torture*

Kimball next 'reiterates' that he was assaulted by an unknown inmate, that the attack was videotaped by Defendants, that Defendants withheld his assailant's identity and released the assailant

---

[4] Moreover, to the extent Plaintiff suggests Defendants violated his constitutional rights by failing to grant his request for a prison transfer to a facility that he felt was better equipped to treat his condition, such a claim lacks merit. A federal prisoner has no constitutional right to be incarcerated in a particular prison or to be held under a specific security classification. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Cash v. Reno*, No. 97-5220, 1997 WL 809982 (6th Cir. Dec. 23, 1997). Further, 18 U.S.C. § 4082(b) allows the Attorney General to designate the place of confinement for each federal prisoner, and gives him complete discretion in doing so. *Meachum v. Fano*, 427 U.S. 215 (1976); *see also Miller v. Henman*, 804 F.2d 421, 425 (7th Cir. 1986) (provisions of prison manual governing prisoner assignment does not create liberty or property interest protected by due process).

10

(4:13CV00225)

from prison, but placed Kimball in "the Hole and tortured" him. (ECF No. 11 at 7.) The Court dismissed this claim because Kimball failed to allege any specific facts from which it could be reasonably inferred that Defendants induced the attack or conspired to cover-up the attack, finding the claim wholly conclusory. The proposed Amended Complaint suffers from the same defects and, therefore, the amendment would be futile.

*F.    Copy Cards*

In his original Complaint, Plaintiff complained that he purchased copy cards from the prison commissary, but the cards did not work and Defendants refused to issue him a refund. In his Amended Complaint, Plaintiff contends that a valid contract was thus formed and that Defendant's breach thereof caused him "mental stress and monetary damages." This claim was dismissed for failure to state a constitutional claim. Plaintiff cannot demonstrate either that the Court made a clear error of law or that this claim should proceed to prevent manifest injustice. An inmate has no federal constitutional right to be able to purchase items from a commissary. *See Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ( "[W]e note that we know of no constitutional right of access to a prison gift or snack shop."); *Hopkins v. Keefe Commissary Network Sales*, No. 07-745, 2007 WL 2080480, at *5 (W.D. Pa. July 12, 2007). Plaintiff's challenge to the commissary's refund policy does not present a constitutional claim. *Cf. Oliver v. Greenwell*, No. 1:05-CV-111-LMB, 2005 WL 2406015, at *3 (E.D. Mo. Sept.29, 2005) (dismissing a prisoner's challenge to items not available at the prison canteen); *Poole v. Stubblefield*, No. 4:05-CV-1005-TCM, 2005 WL 2290450, at *2 (E.D. Mo. Sept.20, 2005) (dismissing a prisoner's challenge to taxes on the prison's commissary items). Consequently, Plaintiff has not shown that he is entitled to relief from the Court's previous

11

(4:13CV00225)

judgment or that he is entitled to proceed on this claim.

### IV. Conclusion

Accordingly, for all of the foregoing reasons, Plaintiff's motion for reconsideration and for leave to amend his Complaint is denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

| | |
|---|---|
| October 2, 2013 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |